UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GEORGE TAPIA,<br><br>          Plaintiff(s),<br><br>v.<br><br>NEVADA ASSOCIATION SERVICES, INC.,<br><br>          Defendant(s). | 2:12-CV-1000 JCM (VCF) |

**ORDER**

Presently before the court is the matter of *Tapia v. Nevada Association Services, Inc.* (case no. 2:12-cv-01000-JCM-VCF).

**I.    Preliminary matter**

On November 28, 2012, defendant Nevada Association Services, Inc. filed a suggestion of death providing notice to the court of the death of plaintiff George Tapia pursuant to Fed. R. Civ. P. 25(a). Upon service of the notice, Mr. Tapia's successor or representative have ninety (90) to make a motion for substitution. However, defendant failed to comply with the requirements of Rule 25(a)(1).

"[T]he rules requires two affirmative steps in order to trigger the running of the 90 day period. First, a party must formally suggest the death of the party upon the record." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994) (citations omitted). Defendant complied with this requirement. (*See* doc. # 11). "Second, the suggesting party must serve other parties and nonparty

**James C. Mahan**
**U.S. District Judge**

successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Barlow*, 39 F.3d at 233. "[N]on-party successors or representatives of the deceased party must be served the suggestion of death in the manner provided by Rule 4 for the service of a summons." *Id.* Defendant did not comply with this requirement.

The 90-day period was not triggered against Mr. Tapia's estate because the appropriate representative of the estate was not served a suggestion of death in a manner provided by Fed. R. Civ. P. 4.[1] The court cannot dismiss the action on this basis.

Defendant is ordered to comply with requirements of Rule 25(a)(1) and effectuate service of not only the notice of death as provided for in Rule 4, but also this order to apprise Mr. Tapia's estate of the status of this case.

Further, there is a pending motion for summary judgment to which neither Mr. Tapia nor his estate had an opportunity to respond. Even though no opposition has been filed, the court will address the merits of the pending motion because it is clear from the evidence submitted that no genuine issue of material fact exists.

## II. Factual background

Mr. Tapia owned real property located 10421 Pacific Sageview Lane, Las Vegas, Nevada 89144. This property is within the Pacific Vintage Owners Association (the association). Defendant is a collection agency authorized by the association to pursue collections and foreclosures on their behalf. (Doc. # 8-1, Ex. A-1).

After Mr. Tapia became delinquent in payments of assessments owed to the association, the association turned the account over to defendant for collection. (*Id.*, Decl. ¶11). On April 2, 2009, defendant sent Mr. Tapia an initial collection notice. (*Id.*, Ex. A-2). Over the course of three years, Mr. Tapia entered into various payment arrangements with defendant. (*Id.*, Ex. A-3). After continual

---

[1] The court notes that included in the suggestion of death notice, defendant provided Mr. Tapia's obituary in the Las Vegas Review Journal. (*See* doc. # 11, ex. B). This obituary contains an email address. This contact may lead defendant to information to properly effectuate service compliant with Rule 4.

**James C. Mahan**
**U.S. District Judge**

- 2 -

breaches, defendant initiated foreclosure proceedings. (*Id.*, Dec. ¶14). On March 25, 2012, defendant sent Mr. Tapia a foreclosure notice. (*Id.*, Ex. A-4)

*Pro se* plaintiff Mr. Tapia brought the instant action alleging that defendant violated the Fair Debt Collection and Practices Act (FDCPA). Mr. Tapia seems to have alleged that defendant violated the FDCPA by (1) attempting to collect fees that are not expressly authorized under 15 U.S.C. § 1692f(1); and (2) by sending a May 12, 2012, collection letter which did not contain disclosures required by 15 U.S.C. § 1692g. (Doc. # 1).

**III.    Legal standard**

A court cannot grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition). Even without an opposition, the court must apply standards consistent with Fed.R.Civ.P. 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Id.* at 950. *See also Clarendon Am. Ins. Co. v. Jai Thai Enterprises, LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash. 2009).[2]

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

---

[2] "[S]mmary judgment cannot be granted by default, even if there is a complete failure to respond to the motion." Fed.R.Civ.P. 56, 2010 cmt. to subdivision (e). The Court may only grant summary judgment if "the motion and supporting materials ... show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

1  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
2  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
3  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

4      In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
5  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
6  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
7  make a showing sufficient to establish an element essential to that party's case on which that party
8  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails
9  to meet its initial burden, summary judgment must be denied and the court need not consider the
10 nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

11     If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
14 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
16 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
17 Cir. 1987).

18     Summary judgment is appropriate when the contract terms are clear and unambiguous. *See*
19 *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l*
20 *Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985). Interpretation of
21 the contract, including whether it is ambiguous, is a matter of law. *Beck Park Apts. v. United States*
22 *Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, a contract provision "is ambiguous
23 if it is reasonably susceptible to more than one interpretation." *See Magrave v. Doormat Properties,*
24 *Inc.*, 110 Nev. 824, 827 (1994).

25 . . .
26 . . .
27 . . .
28

James C. Mahan
U.S. District Judge

- 4 -

IV. Discussion

    A. **Attempting to collect fees that are not expressly authorized under 15 U.S.C. § 1692f(1)**

Mr. Tapia argued that defendant violated 15 U.S.C. § 1692f(1) by seeking to collect fees that are not expressly authorized by agreement or law. (Doc. # 1, ¶ 24).

Defendant argues that it is expressly authorized to proceed with collections and foreclosures, including collection costs. Defendant asserts that its power to do so is authorized by statute, by contract, and by the community's Covenants, Conditions, and Restrictions (CC&Rs).

    I. **NRS Chapter 116**

NRS 116.31021(1)(k) permits a homeowners association to impose charges for late payments of assessments pursuant to NRS 116.3115. A homeowners association has the power to place a lien upon real property for assessments or fines charged to unit owners from the time the assessment or fine becomes due. NRS 116.3116(1). The assessment includes "any penalties, fees, charges, late charges, fines, and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 . . . ." *Id.* Further, NRS 116.310313(1) permits a homeowners association to charge a unit's owner reasonable fees to cover the costs of collecting any past due obligation. *Id.*

NRS 116.3102(1)© permits a homeowners association to "hire and discharge managing agents and other employees, agents and independent contractors." *Id.* An agency relationship exists where a homeowners association hires a collection agency to collect a homeowner's alleged assessment and where the association possessed the contractual right to direct the collection agency to record a lien. *Hamm v. Arrowcreek Homeowners' Ass'n*, 183 P.3d 895, 902 (Nev. 2008). Further, NRS 116.310313(2) expressly permits a homeowners association's collection agency to charge collection costs. *Id.*

The court finds that these provisions of NRS chapter 116 permit collection agencies, such as defendant, to charge and recover collection costs as a homeowners association's agent. Here, defendant, as an agent of the association, is authorized to take actions within that agency relationship. Thus, the actions that Mr. Tapia alleged to be violative of the FDCPA, are not. The fees

1  defendant seeks to collect are authorized pursuant to NRS chapter 116.

### ii.  Consent and Authorization agreement

The association executed a Consent and Authorization agreement which specifically appoints defendant as its agent for all acts required to collect delinquent assessment liens, including collection costs. (Doc. # 8-1, Ex. A-1). The contract specifically states:

> [The Association] hereby appoints [NRS] as the Association's agent for the purposes of collecting delinquent assessments, and/or fines, from Association homeowners. NAS is given full power and authority to act on behalf of and in the name of the Association to do all things in which NSA deems appropriate to effect the collection of a delinquency. This process may include, but is not limited to, sending demand letters, recording of a Delinquent Assessment Lien and if necessary proceeding with a non-judicial foreclosure . . . . The Association also permits NAS to charge collection fees and costs as provided under applicable State and Federal law, and the Association's governing documents.

(Doc. # 8-1, Ex. A-1).

The court finds that this agreement provides defendant with contractual authority to obtain collection costs in relation to obtaining delinquent amounts due on a homeowner's account.

### iii.  CC&Rs

The CC&Rs state that:

> The full annual and special assessments, together with interest, costs, and reasonable attorney's fees, where applicable, shall be a charge on the Unit and shall be a continuing lien upon the Unit against which each such assessment is made.

(Doc. # 8-1, Ex. A-5, § 4.1©).

The court finds that this provision in the CC&Rs, in conjunction with NRS chapter 116 and the Consent and Authorization agreement, provides defendant with express authorization to obtain collection costs in its pursuit of unpaid assessments in the foreclosure process.

Defendant has submitted properly authenticated evidence negating the essential elements of Mr. Tapia's § 1692f(1) claim. *See Celotex Corp.*, 477 U.S. at 323; *see Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment). Since defendant has met its initial burden, the burden shifts to plaintiff to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. However, there is no evidence that Mr. Tapia could present to establish that a genuine issue of

James C. Mahan
U.S. District Judge

- 6 -

1   material fact exists.

2   Thus, the court finds that summary judgment in favor of defendant appropriate. As such, Mr.
3   Tapia's 15 U.S.C. 1692f(1) claim against defendant fails as a matter of law.

    **B.**     **Sending a collection letter which did not contain disclosures required by 15 U.S.C. §§ 1692g and 1692e**

Title 15 U.S.C. § 1692g(a) states:

> (a) Notice of debt; contents
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>     (1) the amount of the debt;
>     (2) the name of the creditor to whom the debt is owed;
>     (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>     (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>     (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.

Title 15 U.S.C. § 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* This section also lists conduct that is violative of the section.

Mr. Tapia argued that defendant's May 25, 2012, letter violated the FDCPA by not containing disclosures required by 15 U.S.C. § 1692g. (Doc. # 1, ¶¶ 21-23, 40). Mr. Tapia also argued that defendant's overshadowing in the May 25, 2012, letter was misleading in violation of 15 U.S.C. § 1692e. (Doc. # 1, ¶ 40).

Defendant argues that the March 25, 2012, letter was not its initial communication with Mr. Tapia. Instead, that letter is a foreclosure notice sent three years after defendant's initial communication with Mr. Tapia. Therefore, the foreclosure notice need not comply with the 15

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  U.S.C. § 1692g requirements. Further, defendant asserts that the April 2, 2009, letter, its initial
2  collection notice to Mr. Tapia, contained disclosures as required under 15 U.S.C. § 1692g.

3  Additionally, defendant argues that Mr. Tapia did not describe how the foreclosure notice
4  overshadowed Mr. Tapia's right to dispute the debt. Thus, defendant argues that Mr. Tapia's § 1692g
5  and § 1692e claims fail as a matter of law.

6  The court agrees. Mr. Tapia's challenge fails on its face. Mr. Tapia not taking issue with
7  defendant's initial communication with him. Instead, Mr. Tapia takes issue with a foreclosure notice
8  sent nearly three years after the initial communication was sent. Thus, the March 25, 2012,
9  foreclosure notice is not capable of violating § 1692g as this section does not apply to this type of
10 communication.

11 To the extent that Mr. Tapia challenged the initial communication with him on April 2, 2009,
12 the court also reviewed this letter. The court finds, however, that this letter is compliant with the
13 requirements of § 1692g. The letter discloses the amount of the debt, names the creditor, and
14 explains plaintiff's right to dispute the debt.

15 A consumer has 30 days from the date of receipt of the initial communication to dispute the
16 debt. 15 U.S.C. § 1692g. Here, Mr. Tapia did not timely dispute the debt. Thus, Mr. Tapia's statutory
17 right had long since expired by the time defendant sent the March 25, 2012, foreclosure notice.

18 Mr. Tapia's § 1692e claim also fails. Mr. Tapia appears to base this claim on the fact that the
19 March 25, 2012, letter "overshadowed or contradicted," *Swanson v. S. Oregon Credit Serv., Inc.*, 869
20 F.2d 1222, 1225 (9th Cir. 1988), his right to dispute the debt. This right, however, expired 30 days
21 after defendant sent its April 2, 2009, letter. Thus, the March 25, 2012, foreclosure notice cannot
22 overshadow an already-expired right.

23 Defendant has submitted properly authenticated evidence negating essential elements of the
24 Mr. Tapia's § 1692g and § 1692e claims. *See Celotex Corp.*, 477 U.S. at 323; *see Orr*, 285 F.3d 764.
25 Since defendant has met its initial burden, the burden shifts to plaintiff to establish that a genuine
26 issue of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. However, there is no
27 evidence that Mr. Tapia could present to establish that a genuine issue of material fact exists.

28

**James C. Mahan
U.S. District Judge**

- 8 -

1  Thus, the court finds that summary judgment in favor of defendant appropriate. As such, Mr.
2  Tapia's 15 U.S.C. §§ 1692g and 1692e claims against defendant fail as a matter of law.

**V.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Nevada Association Services, Inc.'s motion for summary judgment (doc. # 8) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant shall comply with requirements of Rule 25(a)(1) and effectuate service of the notice of death (doc. # 11) and this order upon Mr. Tapia's estate as provided for in Rule 4 to appraise his estate of the status of this case.

IT IS FURTHER ORDERED that this case shall remain open for 90 days from proof of service on the docket to provide Mr. Tapia's estate an opportunity to file a motion for substitution and a motion to reconsider this order, if his estate chooses to do so.[3]

DATED March 15, 2013.

_____
**UNITED STATES DISTRICT JUDGE**

---

[3] The time in which to file an appeal will not start to run until the case has been closed.